# WILLIAM W. GALE AND EDWIN W. SPALDING *vs.* MARTHA S. McCULLOUGH.

*Lessor and lessee: misuse of demised premises; injunction; waste. Contracts: intention; misrepresentation. Equity: power to cancel executed contracts. Landlord and tenant: fiduciary relation.*

A lessor may by injunction prevent his lessee or others claiming or holding under him, or acting by his authority, from converting the demised premises to uses inconsistent with the terms of the contract, and from making material alterations for such purposes and also from committing other kind of waste. p. 291

Technical waste is not essential to the jurisdiction of equity to enable a landlord to restrain the tenant of premises demised for a specific purpose from devoting them to a different purpose, especially when the change will involve repairs and alterations tending to waste. p. 292

There is an implied obligation on the part of a lessee of the same force as an express covenant, against any change or use of the demised premises different from those for which they were leased. p. 292

The existing intention of the party at the time of contracting is a matter of fact, and may be material to the validity of the contract; when a person fraudulently represents his intention in some material point, for the purpose of inducing a contract, it may be sufficient ground for equitable interference. p. 293

The relation of landlord and tenant, in the estimation of a Court of Equity, so far partakes of a fiduciary character, that in all transactions between the parties in reference to the property, the utmost good faith is required. p. 293

By representing to a landlord that the lessee wanted certain property for his own residence and use only, the landlord was induced to so lease the property; the lessee against the well-known wishes of the lessor, took down fences, laid out

a boardwalk and opened a thoroughfare through the property for public use. A bill making such allegations was filed by the lessor against the lessee asking for the annulment of the lease and for an injunction to withstrain the lessee from laying down such a walk and opening a public thoroughfare. *Held,* that such a bill was not demurrable.      p. 294

The power of cancelling an executed contract by a Court of Equity should not be exercised except in a clear case and never for alleged fraud, unless the fraud be made clearly to appear, and never for alleged false representations, unless their falsity is certainly proved, and the complainant has been deceived and injured thereby.      p. 294

*Decided June 12th, 1912.*

Appeal from the Circuit Court for Prince George's County, in Equity, (BEALL, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS and STOCKBRIDGE, JJ.

*Charles B. Calvert* and *F. Snowden Hill,* for the appellant.

*James G. Boss, Jr.,* and *Charles H. Stanley,* for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Prince George's County overruling the demurrer of the appellants to the bill of complaint of the appellee.

The bill alleges that the appellee, Martha S. McCullough, is the owner in fee of a tract of land in Prince George's county, lying between the town of Mt. Rainier on the west and a subdivision of lands on the south, known as Cottage City; that for several years before the filing of the bill in April, 1911, various persons interested in the sale of lots in Cottage City were endeavoring to induce her to open a thor-

oughfare, or give a public right of way, through her said
lands as an extension of Newton Street of Mt. Rainier, to
connect that town with Cottage City; but as the way so
sought would pass through the lawn and immediately in
front of the dwelling thereon, as well as through a pasture
field adjoining, she had constantly refused to permit the
opening of such way, and that her intention to preserve the
property in its then condition was well known to the public
and to the appellants.

The bill further alleges that Joseph S. Farden had for a
long time been her agent for the renting of said property
to her tenants, and was aware of her refusal to permit the
opening of any way through the same, having so late as
October 18th, 1910, inquired of her if she would sell enough
land for opening a way as a continuation of Newton Street,
and being then informed she would not consent.

The bill also alleges that by reason of her ill health she
left the management of said property largely to her sister,
Mary T. McCullough, whom she always consulted before
taking any action in reference thereto; but that on March
23rd, 1911, said Farden brought her for execution by her a
lease of said tract of land to the appellant, William W.
Gale, for a period of three years from April 1st, 1911, at a
yearly rent of $360, payable in monthly installments on the
first day of each month, representing that it was an advan-
tageous transaction for her, and that said Gale desired to
rent the property as his own residence and for the usual pur-
poses of occupation only, but that the lease must be executed
at once, without allowing time to consult her sister, who
was temporarily absent, or said Gale would rent other prop-
erty he was then considering, and that upon these representa-
tions she was induced to accept the first month's rent and to
execute the lease tendered and filed as an exhibit with the
bill, not knowing at the time of its execution, "that the lease
did not contain the usual restriction that the property should
not be used for purposes foreign to an ordinary tenancy."

The bill further alleges that the defendant, Edwin W. Spalding, is a part owner of the Cottage City subdivision, and pecuniarily interested in the sale of lots therein, and that immediately upon the execution of said lease, and before April 1st, 1911, without her knowledge and consent, but with the knowledge and co-operation of said Gale, the said Spalding "removed a part of the fence enclosing said property on the Mt. Rainier side, and commenced to lay and build, and has partly laid and built upon and across said property * * * as a continuation of Newton Street, a board side walk" for the express purpose of building, opening and maintaining a public thoroughfare through the said property, in defiance of her wishes and intentions then well known to the defendants.

The bill further alleges "that the said defendants did conspire together to obtain possession of said property, for the purpose of opening and maintaining a public thoroughfare as aforesaid through the said property, in defiance of the rights of your oratrix, and did through the false and fraudulent representations by them made to the said agent, Joseph H. Farden, and by and through the said Joseph H. Farden to your oratrix, that the property was wanted solely for the usual use and occupation; that it was the intention of the said William W. Gale to occupy the said property for a dwelling; that it was to the interest and advantage of your oratrix to execute said lease; that the said William W. Gale would not rent the said property unless the said lease was executed at once, without time for reflection or consultation with her said sister, induced your oratrix to execute the said lease, which she never would have done had she been properly informed as to the object for which possession of the property was sought; that the entire transaction was a fraud upon her rights; that the opening and establishing of the proposed thoroughfare would greatly injure the said property, and greatly depreciate the value thereof, and also seriously interfere with the sale of the same."

The bill prayed (1) that the lease be annulled and set aside; (2) for an injunction restraining the defendants from continuing further to build said board walk, and from opening said thoroughfare for public use, and (3) for such further relief as her case should require.

A preliminary injunction was issued as prayed, and a demurrer thereto was interposed by the defendants, and upon the hearing thereon the demurrer was overruled, the Court saying in the brief opinion filed: "The main question here is whether or not there is a sufficient allegation of fraud in procuring the lease, and, reading the bill in its entirety, I am of opinion that the averments are sufficient to charge fraud on the part of the defendants, and to require them to make answer to the bill, and an order will be passed overruling the demurrer and giving leave to the defendants to answer."

The sole question for consideration is whether the bill makes such a case as requires an answer, in respect of either the modes of relief sought.

(1) The question of injunction, which is not alluded to in the brief of the appellant, that being devoted exclusively to the question of cancellation of the lease.

The case of *Maddox* v. *White,* 4th Md. 72, is very similar to the present case, involving as it did, a conversion of the demised premises to uses inconsistent with the terms of the contract, by the alteration of the construction of a building, and the question arose upon demurrer to the bill. There was in that case, as in this, a covenant on the part of the tenant to *keep* the premises in good order and to surrender the same at the end of the term in the same good condition as when received.

JUDGE ECCLESTON said, "That a lessor may, by injunction, prevent his lessee, or those claiming or holding under him, *or acting by his authority,* from converting the demised premises to uses inconsistent with the terms of the contract, and from making material alterations for such purposes, *as also from committing other kinds of waste,* will be found

to be fully sustained by *Barret* v. *Blagrave*, 5 Vesey, 555;
*Douglas* v. *Wiggins*, 1st Johns. Ch. 435, and *Steward* v.
*Winters*, 4th Sandf. Ch. 587, referred to by the Court below.
See also *Eden on Injunction*, 377-378, and *2nd Story's Eq.*,
sec. 913."

Mr. Thos. S. Alexander in his argument in that case, said:
"A Court of Equity has a clear jurisdiction, on a bill filed
by the landlord, to restrain the tenant of premises demised
for a specific purpose, from devoting them to a different pur-
pose; and especially when this change in purpose will involve
the necessity of repairs and alterations tending to waste and
injury." Mr. Alexander's eminence as a Chancery lawyer
was such as to justify this citation from his argument, in
order to show that he did not regard *technical* waste as
essential to the jurisdiction of the Court, and the language
of JUDGE ECCLESTON quoted above, shows that the Court was
in substantial accord with that view. In *High on Injunc-
tions*, sec. 434, the author, after illustrating acts of waste
which will entitle a landlord to an injunction, says, "*Upon
analogous principles*, the lessor may restrain his lessee, or
those claiming under him, or acting under his authority, from
converting the demised premises to such uses as are incon-
sistent with the terms of the lease, and as *are likely* to result
in such injury to the owners rights as cannot be adequately
compensated at law." And the same author, Vol. 1, 572,
says, "The unauthorized opening of a highway through
plaintiff's property, and the cutting of his timber and hedges
and the removal of his fences in opening the highway, con-
stitute sufficient grounds for an injunction, even though it
is not shown that the defendants are insolvent, the injury
in such cases being regarded as irreparable."

It is not necessary that there should be an express cove-
nant against such change of use. There is an implied obli-
gation on the part of the lessee to that effect, of the same
force as an express covenant. *Underhill on Landlord and
Tenant*, page 729; *U. S.* v. *Bostick*, 94 U. S. 53.

In *Bonnett* v. *Sadler,* 14 Vesey, 526, the lessees represented that they wanted the house as a private residence, but proceeded to convert it into a coach building shop, and LORD ELDON, in granting the injunction until answer, or further order, said, "Under the circumstances of this case it cannot be represented that these defendants did not take this agreement for a lease under surprise produced by studious, artful and what this Court calls fraudulent concealment, for the very purpose of obtaining a lease which they knew the plaintiffs would not have granted except under the effect of that concealment."

In *Parkman's Adm.* v. *Aicardi Tool Co.,* 34 Ala. 397, the Court said: "In the exercise of the inherent power which it possesses in cases of fraud, a Court of Chancery will interfere by injunction to prevent a party from availing himself, *in any manner, of a right or title* arising out of a breach of contract, trust or confidence. *Prince Albert* v. *Strange,* 1st MacNaughten & Gordon's, 25. The relation of landlord and tenant, in the estimation of a Court of Equity, so far partakes of a fiduciary character, that in all transactions between the parties in reference to the property, the utmost good faith is required. 1st *Story's Eq.,* secs. 218, 323; *Bonnet* v. *Sadler,* 14 Vesey, 526."

It was earnestly argued that each of the alleged false representations was of a matter of opinion or intention, and not of a material existing fact, and therefore afforded no ground for equitable interference, but we cannot agree with this contention. In the last English edition of *Kerr on Fraud and Mistake,* page 53, it is said: "The existing intention of a party at the time of contracting is a matter of *fact,* and may be material to the validity of a contract; so that if it be proved that a person has fraudulently misrepresented his intention in some material point for the purpose of inducing a contract, it may be a sufficient ground for avoiding the contract." "A statement may be one of intention, but nevertheless a statement of fact." *Idem,* page 52. "The fraud

though not sufficient to avoid the lease at law, may have been a ground for relief in equity." *Jorden* v. *Money,* 5th House of Lords cases, 185.

It was also contended that the bill contained no matter from which the Court could see that the plaintiff has been, or will be, damnified, because a tenant cannot grant a valid easement over the land of another without authority from him. This is true, but if the opening of this way cannot be now restrained, and lots are sold in Mt. Rainier and Cottage City in reliance upon access thereto over this way, then upon the expiration of this lease and the closing of the way by the plaintiff, she would in all probability be subjected to much vexatious and costly litigation by such disappointed purchasers of lots, and this is a consideration directly affecting the question of damages, and not lightly to be regarded.

We think it is quite clear that in respect of the prayer for an injunction the learned Court was right in requiring the bill to be answered.

(2) As to the cancellation of the lease.

It is said in *Ranstead* v. *Allen,* 85 Md. 486, "that cancelling an executed contract is an exertion of the most extraordinary power of a Court of equity. The power ought not to be exercised except in a clear case, and never for alleged fraud, unless the fraud be made clearly to appear, never for alleged false representations, unless their falsity is certainly proved, and unless the complainant has been deceived and injured thereby."

It is not necessary to the affirmance of this decree that we should consider and determine whether the averments of this bill would have been sufficient to warrant the overruling of the demurrer, if the only relief prayed had been the cancellation of the lease, and we shall express no opinion upon that branch of the case. That can be best determined upon the coming in of the answer, and upon such evidence in respect to the alleged fraud in obtaining the lease, as may be produced, but for the reasons already stated the decree

will be affirmed and the cause be remanded for further proceedings in conformity with the order of the Circuit Court.

> Decree affirmed and cause remanded for further proceedings, with costs to the appellee above and below.