MARY H. COX, ET AL. *v.* SAMUEL O. TAYMAN, ET AL.

[No. 7, April Term, 1943.]

*Decided June 2, 1943.*

The cause was argued before SLOAN, C. J., COLLINS, MARBURY, GRASON, MELVIN, and ADAMS, JJ.

*LeRoy Pumphrey* for the appellants.

*Albert R. Hassall* and *J. Dudley Digges* and *Sasscer & Digges* submitted on brief for the appellees.

ADAMS, J., delivered the opinion of the Court.

This is an action in equity brought against two defendants to set aside two deeds conveying real estate, one from complainants to defendant Cox, and the other conveying the same real estate from the defendant Cox

to the defendant Cosby. The complaint is based upon alleged false representation to the complainants as to the use which defendant Cox intended to make of the real estate conveyed.

The property conveyed consisted of two lots, numbered 10 and 11, abutting the rear of a property owned by the defendant Cosby on which he operated an automobile garage and repair shop, and the bill of complaint alleges that Cosby had tried to buy the said two lots from the complainants, but they had refused to sell them to him because he intended to use them for the storage of old automobiles and accessories, which use would adversely affect other lots owned by complainants in the immediate vicinity.

It is alleged that the defendants entered into an agreement for the purpose of using the defendant Cox as the agent of the defendant Cosby to obtain the said lots for the defendant Cosby; that defendant Cox negotiated with complainants for the purchase of said lots, representing that she was purchasing said lots for her own use and that she was going to erect upon said lots an attractive bungalow, well knowing at the time that the representations were false and fraudulent and made solely for the purpose of inducing a sale to her as undisclosed agent of the defendant Cosby; that the complainants sold and conveyed the said lots to the defendant Cox but had they known the fraudulent purpose, plan and scheme of the defendants Cox and Cosby, they would not have done so; that the initial payment of $50 and the balance of $450 made by the defendant Cox were really made by the defendant Cosby, and that in furtherance of the fraudulent scheme defendant Cox thereafter conveyed said lots to defendant Cosby.

The deed from Tayman to Cox was dated September 3, 1936, and the deed from Cox to Cosby was dated November 10, 1936, the interval being two months and one week.

It is undisputed that Cosby tried to buy the lots from the Taymans and that they refused to sell them to him;

there is some conflict in the testimony as to the reason for the refusal, Tayman testifying that he refused to sell to Cosby because Cosby's intended use of the lots would depreciate the value of other property in the vicinity, and other testimony suggesting that while Tayman and Cosby had been friends, a short time previous to the effort of Cosby to buy the lots, Tayman and Cosby had had some trouble about a note, which trouble may have influenced Tayman's refusal to sell to Cosby.

The testimony in the case was quite conflicting, the facts which were undisputed being as follows:

(1) That Cosby tried to buy the lots from Tayman and he refused to sell to Cosby.

(2) That Cox stated during the negotiation for the lots that she wanted the lots to build a house on and that she did ask for a recommendation as to a builder.

(3) That Cosby, in the fall of 1937, built a home on the same lot on which his garage stood.

(4) That Cox conveyed the lots to Cosby for the same price that Cox had paid the Taymans for them.

(5) That the purchase price of $500 was tendered back to Cosby and he rejected it.

There was testimony on the part of the complainants that Cosby had said in November, 1936, that "these lots that I paid the $50 that Miss Cox gave you on the contract, was my $50, and the $450 she gave you when the deed was executed, was his (Cosby's) $450. * * * I tried to buy them through you, and I could not do it, * * * I had to get her to buy them from you." Complainant Tayman testified that he told Miss Cox that Cosby had offered to buy the lots from him and he would not sell them to him because he had promised the people across the street that the garage property would not be extended farther; that he would not have sold the lots to Miss Cox if he had known that Cosby would get them or that she was buying them for him. Samuel R. Brady, a witness for complainant, testified that after the first hearing of the case, Cosby told him it was his money that paid for the lots and that he had a friend in Washington and got her to buy the lots.

Defendant Cosby testified that he finished paying for his garage April or May, 1936; that he wanted the two lots, to use the one nearest the garage as a rear entrance to the garage, and to use the other lot as the site of a dwelling house which he was trying to get ready to build; that he built a house in the fall of 1937, but on advice of counsel did not build on the rear lot, so he had to crowd his house up by the garage; that Miss Cox is a friend of the Cosby family and when she learned of Cosby's desire to have the lots and build a house, she said she would buy the lots and build a house there, that she had some extra money, she would buy the lots and build the house and rent it to us; that Cosby did not have the money to buy the lots and build at that time, but that later he sold some material that he had on hand and raised some money; that he then told Miss Cox he could handle it himself if she would let him have the lots; that when he bought the lots from Miss Cox he paid her cash; that he did not put up the original $50 nor the balance of $450 paid by Miss Cox for the lots and when she bought the lots she was not negotiating for him; that he did not tell Mr. Tayman that he ever gave Miss Cox the money to buy these lots for him; that he gave her the $500 the day he got the deeds from her.

Defendant Mary H. Cox testified that she had known the Cosby family more than twenty years; that they visit each other frequently; that Cosby was disappointed in not getting the lots near his garage, where he could build, and she told him she had some money and would buy the lots and build a house there which he could rent and if he became financially able she would sell it to him; that she did not purchase the lots as Cosby's agent and the original deposit and final payment was her own money; that when she bought the lots it was her purpose to put a house on them; that Cosby wanted her to buy the lots and put a house on them and rent it to him as he did not have money to build at that time; that Cosby paid her in cash for the lots.

Cosby testified that "after Miss Cox had deeded the lot to him, Mr. Tayman came to the garage one Saturday night and said he heard I had the lots and he said he was glad it turned out the way it was, that it was satisfactory to him * * *."

Tayman denied that he told Cosby he was glad he got the lots, but testified he "had made self satisfied about Cosby having lots, but when Cosby said how he got them, got angry about it."

The question presented here is whether the complainants have met the burden of proof they carry. For it is clear on authority that a much higher degree of proof is required in a case such as this, than in the ordinary civil case where a decision is based upon a mere preponderance of the evidence. In a suit to set aside a deed on the ground of fraud the alleged fraud must be established by the clearest and most satisfactory proof and if there is doubt as to the existence of the alleged fraud, relief should be denied.

It is undoubtedly true that if Miss Cox falsely represented to Tayman, at the time she was negotiating to purchase the lots, that she intended to build a dwelling house on the lots, whereas her real intention was to convey the lots to Cosby, and if her false representation was an inducing cause of the sale and conveyance to her by Tayman, then the fraud practiced upon Tayman would vitiate the transaction and the conveyances should be set aside.

Existing intention is a matter of fact, and fraudulent misrepresentation of existing intention, which is an inducement to the making of a contract, may be ground for rescission of the contract. *Coan v. Consolidated Gas, E. L. & P. Co.*, 126 Md. 506, 95 A. 151; *Gale v. McCullough*, 118 Md. 287, 84 A. 469.

The sole issue is whether the proof in this case meets the standard that has been repeatedly announced by this court in actions in which the relief sought has been the cancellation of executed formal agreements. In a number of cases approval has been given to the language of

the Supreme Court of the United States in the case of *Atlantic Delaine Co. v. James,* 94 U. S. 207, 24 L. Ed. 112. See: *Cochran v. Pascault,* 54 Md. 1; *Ranstead v. Allen,* 85 Md. 482, 37 A. 15; *Wenstrom Consolidated Dynamo & Motor Co. v. Purnell,* 75 Md. 113, 23 A. 134; *Gale v. McCullough,* 118 Md. 287, 84 A. 469.

In *Ranstead v. Allen,* 85 Md. 482, 37 A. 15, 17, an action for cancellation of a lease of real estate, the court, referring to the cancellation of a formal instrument, said: "It is an exercise of power fraught with much danger, unless guarded with an ever-zealous care to see that there is no uncertainty about the evidence relied on. This court has in several cases adopted the language of the Supreme Court of the United States in the case of *Atlantic Delaine Co. v. James,* 94 U. S. 207 [24 L. Ed. 112], on this subject, 'that cancelling an executed contract is an exertion of the most extraordinary power of a court of equity. The power ought not to be exercised except in a clear case, and never for alleged fraud, unless the fraud be made clearly to appear; never for alleged false representations, unless their falsity is certainly proved, and unless the complainant has been deceived and injured thereby'."

In the case of *Wenstrom Consolidated Dynamo & Motor Co. v. Purnell,* 75 Md. 113, 23 A. 134, 135, this court said: "This being a question of fraud, the principle is well settled that the onus is upon the plaintiff, who seeks to set aside a contract executed or partly executed, to establish the alleged fraud by clear and indubitable proof. For the court will not, as said by Judge Story, rescind the contract without the clearest proof of the fraudulent misrepresentations * * *."

The only evidence contradictory of the testimony of defendants Cox and Cosby is testimony of the complainant Tayman, his attorney, A. R. Hassall, and S. R. Brady, as to certain statements made by the defendant Cosby to the effect that he had got Miss Cox to buy the lots for him. Both Cosby and Cox denied that Cox acted as Cosby's agent in the transaction and that Cosby had

advanced the money for the purchase of the lots by Cox. It was undisputed that Cox conveyed the lots to Cosby two months and seven days after the conveyance to her, also that about two months before the sale to Cox, Tayman had refused to sell the lots to Cosby. It was also a fact that in the fall of 1937 Cosby built a dwelling house for himself on the garage lot and was advised by counsel that during the pendency of this action, it would not be advisable to build on the lots in question.

While the conveyance from Cox to Cosby shortly after the acquisition of the lots by Cox is corroborative of the complainants' theory of the case, the fact that Cosby built a home in the fall of 1937 is corroborative of the defense theory that Miss Cox was purchasing the lots to build a dwelling house to be rented to and occupied by Cosby.

The single issue of fact in this case is: What was the intention of Miss Cox at the time she was negotiating the purchase of the lots from Tayman and his agent, Griffith? There is no evidence of any statement made by Miss Cox to any one on any occasion that is contradictory of the statements made by her at the time of the purchase of the lots.

Bearing in mind that there must be "no uncertainty about the evidence relied on," that fraud must "be made clearly to appear" and established "by clear and indubitable proof," that the falsity of false representations must be "certainly proved" and by "the clearest proof," our conclusion is that the evidence in this case does not measure up to the high and exacting standards here applicable. While we are of the opinion that the preponderance of the evidence is on the side of the complainants, it yet falls short of the certainty and clarity necessary to support the relief prayed.

Our conclusion is therefore that the bill of complaint should be dismissed and the case is reversed and remanded for the signing of a decree in accordance with this opinion.

*Costs to the appellants.*