547 A.2d. 636

Frederick R. WEISMAN, et al.

v.

Arthur B. CONNORS.

No. 522, Sept. Term, 1986.

Court of Special Appeals of Maryland.

Sept. 29, 1988.

Benjamin R. Civiletti (Paul F. Strain, Christopher R. Mellott, Venable, Baetjer and Howard and Oscar S. Gray, on the brief), Baltimore, for appellants.

George Beall (Kristine A. Crosswhite, E. Christina Gerstung and Miles & Stockbridge, on the brief), Baltimore, for appellee.

Argued before WILNER, ROBERT M. BELL and POLLITT, JJ.

WILNER, Judge.

Arthur Connors sued Frederick Weisman and Frederick Weisman Company (FWC), whom we shall sometimes collectively refer to as Weisman, in the Circuit Court for Anne Arundel County. The nature of the action is described in this Court's Opinion in *Weisman v. Connors,* 69 Md.App. 732, 519 A.2d 795 (1987) and in the Opinion of the Court of Appeals in 312 Md. 428, 540 A.2d 783 (1988). Suffice it to say, for purposes of this proceeding, that (i) Frederick Weisman was the sole owner of FWC, a holding company whose chief component was a major Toyota distributorship known as Mid–Atlantic Toyota (MAT), (ii) in 1981, Mr. Weisman induced Connors, then a high-level executive with

Ford Motor Company, to leave Ford and accept employment with Weisman, (iii) Connors left Weisman's employ after 27 months, believing that he had been constructively discharged, and (iv) he thereafter sued Weisman for breach of contract, negligent misrepresentation, and fraud.

The negligent misrepresentation and fraud counts were based on six alleged misrepresentations made by Weisman and relied upon by Connors, namely:

(1) that Connors would have broad executive responsibilities with regard to FWC in all aspects relating to the automobile business;

(2) that Connors would not be simply the general manager of MAT, which already had a general manager, one Robert McCurry;

(3) that FWC would replace a $200,000 life insurance policy that was being provided by Ford;

(4) that Connors would receive equity participation in all new FWC ventures relating to the automobile business and that the value of those interests would more than offset the benefits Connors would lose by leaving Ford;

(5) that FWC and MAT had a secure and stable franchise relationship with the Toyota organization; and

(6) that Weisman had a basically amicable relationship with MAT's manager, Mr. McCurry—nothing more serious than a "communications problem."

All three causes of action were submitted to a jury, which (i) found the defendants liable for breach of contract and negligent misrepresentation, (ii) awarded damages of $221,-900 and $2,705,961, respectively, on those causes, and (iii) found in favor of the defendants on the fraud count.

From the judgment entered on those verdicts, both sides appealed. Weisman complained principally, although not solely, about the action for negligent misrepresentation and the evidence and calculation of damages in that action. Connors complained about the court's instructions on the fraud count and on certain aspects of the breach of contract

count. His complaint as to the fraud count was that the court effectively told the jury that the alleged fraud had to be proved beyond a reasonable doubt, rather than by the lesser standard of clear and convincing evidence. Because Connors was apparently satisfied with the net result of the verdict, however, he made clear to us at oral argument that his cross-appeal was merely a "protective" one—that if this Court was inclined to affirm the judgment entered by the Circuit Court on the breach of contract and negligent misrepresentation counts, he did not wish a reversal or new trial on the fraud count. *See Weisman v. Connors*, 69 Md.App. at 737 n. 1, 519 A.2d 795.

This Court did not set aside the favorable judgment but instead affirmed it. We therefore did not address any of the three issues raised in the cross-appeal.

Aggrieved by our decision, Weisman sought *certiorari* in the Court of Appeals, complaining principally about our affirmance of the judgment entered on the negligent misrepresentation count.[1] In a conditional cross-petition, Connors asked that, if the Court of Appeals decided to review any of the issues raised by Weisman, it also consider whether the trial court properly instructed the jury on the standard of proof for fraud.

The Court of Appeals granted Weisman's petition to consider three issues: whether it is unnecessary to consider the question of duty as a prerequisite to liability in negligence for misrepresentation; whether a person could be liable for negligently but not fraudulently misstating his or her intentions; and what the appropriate measure of damages should be where one enters into a personal services

---

1. The depth of Weisman's dissatisfaction with our decision is evident from his petition for *certiorari*, where he claimed that we had "depart[ed] from Maryland precedent on negligence law and ... eviscerate[d] basic protections of contract law," that we had "fundamentally altered the employer-employee relationship and displaced contract law from an area in which it traditionally has functioned," and that our affirmance of the damages awarded by the jury "cannot be reconciled with elementary principles of tort law."

contract through misrepresentation. The Court denied Connors' conditional cross-petition and thus declined to review the instructions on the fraud count.

In an Opinion filed in May, 1988, the Court of Appeals concluded, essentially, that (i) the tort of negligent misrepresentation is alive and well in Maryland, (ii) there was sufficient evidence in this case to permit the jury to find that Weisman had a duty to Connors not to make negligent misrepresentations of present or past facts about the position being offered to Connors, (iii) of the six representations complained of by Connors, the first four enumerated above constituted expressions of Weisman's "present intention" that were not *mistakenly* made contrary to his actual then-present intention, and so those four representations could not serve as the basis of liability for negligent misrepresentation, and (iv) the other two representations constituted statements of present facts and could serve as the basis of liability, in that there was sufficient evidence that they were false, that they were negligently asserted, that Weisman intended for Connors to act on them and had reason to believe that Connors would rely on them, that Connors was justified in relying on them, and that he sustained damage as a result. *Weisman v. Connors,* 312 Md. 428, 540 A.2d 783 (1988).

Because the Court's fourth conclusion required a retrial on the negligent misrepresentation count, the Court did not directly address the issue of damages, although, in a pregnant footnote, it cautioned the Circuit Court to be a bit careful in that regard.

The initial mandate appended to the Court's Opinion read: "AS TO THE NEGLIGENT MISREPRESENTATION COUNT OF THE COMPLAINT: JUDGMENT OF THE COURT OF SPECIAL APPEAL REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR A NEW TRIAL; COSTS TO ABIDE THE RESULT."

Connors quickly realized that this disposition left in limbo his complaint about the instructions on the fraud count. Neither this Court nor the Court of Appeals had addressed that complaint, although it had been properly raised and, in light of the ultimate reversal of the judgment on the negligent misrepresentation count, it had become "unmoot." He therefore asked the Court of Appeals to clarify its mandate by directing this Court to consider that issue. The Court found merit in Connors' request and amended the mandate to read:

"AS TO THE NEGLIGENT MISREPRESENTATION COUNT OF THE COMPLAINT: JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT FOR RULING ON THE ISSUES RAISED BY THE APPELLEE ON CROSS–APPEAL AND, THEREAFTER, THE COURT OF SPECIAL APPEALS IS DIRECTED TO REMAND THE CASE TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR A NEW TRIAL; COSTS TO ABIDE RESULT."

(Emphasis added.) *Weisman v. Connors*, 312 Md. at 460–61, 540 A.2d 783.

Weisman objected to the Court's amending its mandate. In a motion for reconsideration, he contended that (1) by denying Connors' cross-petition, the Court had "effectively disposed of the fraud issue," and that our "decision on the fraud count" was therefore final and unreviewable, (2) by making clear in this Court that he did not want a reversal of the judgment entered in the Circuit Court, Connors had "made clear to the Court that the fraud claim was not a serious or important one" and that he had thus failed to preserve the issue for further review, and (3) by directing this Court to consider "the issues raised by the Appellee on cross appeal," the Court had authorized us to "reconsider" two issues relating to the breach of contract claim, as to which Connors had not sought *certiorari*. The Court of Appeals denied Weisman's motion, and so the case was returned to us under the amended mandate.

The crux of the cross-appeal is this instruction, reprinted in full, that the trial judge gave to the jury concerning the standard of proof to be applied to Connors' allegations of fraud:

"Now when we go to fraud, fraud has to be proven by what's called clear and convincing evidence. It's a higher test than a preponderance of the evidence. To be clear and convincing evidence must be clear, plain to the understanding and unambiguous. *Stated differently, to be clear and convincing the evidence of fraud must be such that you're left without reasonable doubt. The plaintiff though does not have to prove the case beyond all possible doubt or to a mathematical certainty. Nor is the plaintiff required to negate every conceivable circumstance that could have occurred to the effect that the defendant did not commit fraud. Has to prove it beyond a reasonable doubt as I said before, and a reasonable doubt is a doubt founded upon reason.* Great—great description. It's not a fanciful doubt or a whimsical or a capricious doubt. It is such a doubt as would cause a reasonable person to hesitate to act in the graver or more important transactions of life. Thus if the evidence is of such a character as to persuade you of the truth of the charges against the defendant or defendants in this case, same applies with the two defendants in this case, separately or collective, with the same force that would be sufficient to persuade you to act upon that abiding conviction of truth in the graver or more important transactions of your own life, you may conclude that the plaintiff has met its burden of proof beyond a reasonable doubt. However, if that doesn't occur, you can't find fraud, and you don't find fraud damages and you don't find punitive damages."

(Emphasis supplied.)

Connors' argument is straightforward: the standard of proof required to establish fraud is that of clear and convincing evidence; that standard is a lesser—more lenient—one than proof beyond a reasonable doubt; read as a whole,

the court's instructions in effect told the jury that the alleged fraud had to be proved beyond a reasonable doubt; that was wrong, and, as the jury returned a defendants' verdict on the fraud count, the error was prejudicial.

Weisman makes three arguments in response. He claims that (1) the instruction was correct, (2) even if not correct, the instruction was not prejudicial because Connors failed to prove any fraud, and (3) Connors, in any event, waived his right to complain. We shall deal with these contentions in inverse order.

### Waiver

Weisman's waiver argument is premised on the acknowledgment by Connors at the earlier oral argument before us that the cross-appeal was essentially a protective one and that he did not wish a reversal if he was successful as an appellee. Weisman sees in this an implication on Connors' part that "his fraud claim was not serious or important enough to merit this Court's attention." We certainly did not see then, and do not see now, any such implication. It was apparent to all that punitive damages were available only upon the fraud count; it was also apparent, however, that Connors had won a $2.7 million compensatory judgment against Weisman following litigation that was long, hard-fought, and no doubt terribly expensive. We did not regard Connors' statement as, in any sense, constituting an abandonment of the cross-appeal but simply a pragmatic decision not to press for a new trial simply in the hope of collecting additional punitive damages if he were able to retain his sizeable compensatory judgment. This was also, we assume, evident to the Court of Appeals, for, in denying Weisman's motion to reconsider the amendment of its mandate, it had before it and tacitly rejected the same argument.

### Evidentiary Sufficiency

Weisman's second argument is premised on the supposition that all that remains in this case are the two

misrepresentations remanded for retrial under the negligent misrepresentation count—that Weisman's Toyota franchise was "stable," when, at the time that statement was made, there was a significant risk of his losing it, and that Weisman had a basically amicable relationship with the then-manager of the distributorship, when, in fact, he did not. He assumes that, because the Court of Appeals declared that the other four representations at issue could not form the basis of liability for negligent misrepresentation, they also cannot form the basis of liability for fraud. He addresses with particularity only the two statements he regards as still viable. In urging that Connors "never proved his fraud claim," Weisman now argues:

"The evidence regarding the alleged misrepresentation concerning the Toyota franchise would not support a fraud verdict for two reasons. First, the evidence at trial showed that Mr. Weisman's characterization of the relationship was true. There *was* a favorable climate for franchise renewal, and the franchise was renewed in 1982 for five full years [citation omitted].

Second, there was no evidence in Connors' hundreds of pages of testimony that he relied on Mr. Weisman's characterization of the franchise relationship. The record is directly to the contrary." [2]

(Emphasis in original.)

We find no merit in that argument, principally because the assumption upon which it rests is not correct. We do not think that the fraud count is restricted to the two

---

**2.** We note, with some irony in light of Weisman's claim of waiver on Connors' part, that Weisman never presented this argument when the cross-appeal was before us earlier. The whole and exclusive response to the cross-appeal at that time was that the burden of proof instruction was correct; there was no claim in the initial brief as cross-appellee that the instruction was not warranted on the evidence. As the Court allowed reargument on the cross-appeal without restriction, however, we shall not foreclose presentation of this new contention. *See, however,* Md. Rule 8–504; *Federal Land Bank v. Esham,* 43 Md.App. 446, 458–61, 406 A.2d 928 (1979).

misrepresentations left alive under the negligent misrepresentation count.

In *Martens Chevrolet v. Seney*, 292 Md. 328, 333, 439 A.2d 534 (1982), the Court held that "[t]he critical element of the tort of deceit [fraud] that distinguishes it from others arising from false representation is scienter on the part of the defendant—intent to deceive the other party." Thus, confirming earlier pronouncements, the Court iterated that "a misrepresentation believed by the speaker to be true, though induced by his ignorance or negligence, will not sustain an action for deceit." *Id.* at 334, 439 A.2d 534, *quoting from Donnelly v. Baltimore Trust & Guarantee Co.*, 102 Md. 1, 13, 61 A. 301 (1905). The *Martens Chevrolet* Court did observe, however, that "[n]othing prohibits a plaintiff from pleading both deceit and negligent misrepresentation in one declaration *and then relying on the same nucleus of facts in an attempt to satisfy the differing burdens of proof on these alternate claims.*" (Emphasis added.) 292 Md. at 337, 439 A.2d 534.

That, of course, was precisely what Connors sought to do. As noted by the Court of Appeals in its *Weisman* Opinion, 312 Md. at 455, 540 A.2d 783:

"As to all six of the alleged misrepresentations involved in the tort counts, Connors' evidence at trial was principally directed to establishing that they were *fraudulently* made—that Weisman *purposely* misstated his actual intentions and expectations, believing one thing and deliberately saying another to induce Connors to leave Ford and join FWC."

(Emphasis added.) The Court recounted, however, that "[i]n rejecting this claim, and finding Weisman liable under the negligent misrepresentation count, the jury necessarily concluded that Weisman's representations were not fraudulent but instead had been negligently made." *Id.*

The problem with that conclusion, said the Court at 456, was that:

"As to the first four alleged misrepresentations, there was *no* evidence that Weisman meant, but *mistakenly* failed, to communicate intentions or expectations other than those that he did communicate. In other words, there was no legally sufficient evidence from which the jury could have drawn a rational inference that Weisman, during his two precontractual meetings with Connors, *mistakenly* expressed intentions or expectations which were at variance with his true state of mind at the time the representations were made. Demonstrative of the absence of *mistake* on Weisman's part is the fact that each of these representations found expression, exact or approximate, in the negotiated contract of employment. It was thus error to permit the jury to consider these representations in its deliberations on the negligent misrepresentation count; as to these representations, they should have been withdrawn from the jury's consideration."

(Emphasis added.) [3]

■ The fact that the evidence was legally insufficient to show mistake does not mean that it was legally insufficient to show a purposeful and deliberate intent to deceive. There was indeed evidence from which the jury might have concluded that Weisman never intended to do what he told Connors he would do, that his assertions were not simply mistakenly false but knowingly so. As Connors points out,

---

**3.** Contrariwise, as to the other two alleged misrepresentations, the Court held, at 458, 540 A.2d 738:

"We think there was evidence before the jury, which was legally sufficient to permit it to find that these two representations were false, that they were negligently asserted, that Weisman intended that his representations would be acted upon by Connors, that Weisman had reason to believe that Connors would probably rely on these statements, that Connors was justified in relying upon them, and that he thereby sustained damage as a proximate result of Weisman's negligence. In this regard, while the jury rejected Connors' claim that the representations were fraudulently made, this did not preclude it from finding that the representations were so carelessly made as to violate the duty of ordinary care imposed upon Weisman under the circumstances."

the jury's failure to make such a finding may have been simply the product of its belief that such a finding had to be based on more than clear and convincing evidence—that it had to be beyond any reasonable doubt—and its determination that the evidence of deliberateness on Weisman's part did not suffice under *that* high standard. Although the fraud count was not directly before the Court of Appeals in its *certiorari* review, we hardly think that it would have deliberately burdened this Court, through its ultimate remand, with deciding a claim which it had already concluded was without an evidentiary basis.

In oral argument, Weisman urged that, in judging evidentiary sufficiency, we apply the clear and convincing evidence test ourselves, exactly as the jury would have to do, and that we reject the fraud claim unless *we* find the evidence supporting it to be clear and convincing. There are, to be sure, a number of instances in which the Court of Appeals, reviewing equity judgments in actions to reform or nullify deeds or contracts, purported to weigh the evidence against a standard of proof. *See, for example, Gingell v. Backus,* 246 Md. 83, 227 A.2d 349 (1967); *Cox v. Tayman,* 182 Md. 74, 32 A.2d 368 (1943). But more recent cases, read in parity with the "clearly erroneous" standard embodied in former Md. Rules 886 and 1086 and current Rule 8–131(c), suggest that that is not what appellate courts are to do. In a non-jury case, the appellate court does not evaluate conflicting evidence but assumes the truth of all evidence, and inferences fairly deducible from it, tending to support the findings of the trial court, and, on that basis, simply inquires whether there is any evidence legally sufficient to support those findings. *See Pahanish v. Western Trails, Inc.,* 69 Md.App. 342, 517 A.2d 1122 (1986); *Carling Brewing Co. v. Belzner,* 15 Md.App. 406, 291 A.2d 175 (1972).

Although Rule 8–131(c) is not, by its terms, applicable to jury cases, the same principle applies. *See Bedford v. State,* 293 Md. 172, 174–76, 443 A.2d 78 (1982); *State v.*

*Rusk,* 289 Md. 230, 424 A.2d 720 (1981); *Williams and McClelland v. State,* 5 Md.App. 450, 459, 247 A.2d 731 (1968), *cert. denied* 252 Md. 731 (1969). Thus, even in a criminal case, where the reasonable doubt standard applies, that standard does not require an appellate court to "ask itself whether *it* believes the evidence at trial established guilt beyond a reasonable doubt" but only to determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Tichnell v. State,* 287 Md. 695, 717, 415 A.2d 830 (1980), quoting from *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979). Applying that principle, we conclude that there was sufficient evidence from which a rational jury, applying a clear and convincing evidence standard, could have concluded that the alleged misrepresentations sued upon were fraudulently made.

### Standard of Proof—Correctness of the Instruction

We turn now to the principal issue before us—whether the instruction, read as a whole, fairly and correctly informed the jury of the appropriate standard by which they were to weigh the evidence relating to Connors' claim of fraud. We begin with three rather basic propositions, about which there should be little or no disagreement:

■ (1) The function of a standard of proof is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication," or, in other words, "to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." *Addington v. Texas,* 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979), quoting in part from *In re Winship,* 397 U.S. 358, 370, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring); *see also Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

■ (2) The law now recognizes three different, supposedly discrete standards for proving an allegation of fact in court: proof by preponderance of the evidence, proof by "clear and convincing" (or sometimes "clear, cogent, unequivocal, and convincing") evidence, and proof beyond a reasonable doubt. *See generally* E. Cleary, *McCormick On Evidence* §§ 339–41 (3d ed. 1984); *Addington v. Texas,* 441 U.S. at 423–25, 99 S.Ct. at 1808–09.

■ (3) The standard applicable to an allegation of fraud is the intermediate one of clear and convincing evidence. *See Everett v. Baltimore Gas & Elec.,* 307 Md. 286, 513 A.2d 882 (1986) and cases cited therein.

The law has had little difficulty in defining, or at least in differentiating between, the preponderance standard, applied in most civil actions, and the "beyond a reasonable doubt" standard, generally reserved for criminal cases. We need not go beyond the Maryland Pattern Jury Instructions for a good, workable definition of those concepts. Thus:

(1) "To prove by a preponderance of the evidence means to prove that something is more likely so than not so. In other words, a preponderance of the evidence means such evidence as, when considered and compared with that opposed to it, has more convincing force and produces in your minds a belief that it is more likely true than not true.

 · · · · ·

If you believe that the evidence is evenly balanced on an issue, then your finding on that issue must be against the party who has the burden of proving it." MPJI 1:8 (2d ed. 1984)

As compared with:

(2) "The State has the burden of proving the guilt of the defendant beyond a reasonable doubt.... However, the State is not required to prove guilt beyond all

possible doubt or to a mathematical certainty. Nor is the State required to negate every conceivable circumstance of innocence.

A reasonable doubt is a doubt founded upon reason. It is not a fanciful doubt, a whimsical doubt or a capricious doubt. Proof beyond a reasonable doubt requires such proof as would convince you of the truth of a fact to the extent that you would be willing to act upon such belief without reservation in an important matter in your own business or personal affairs...." MPJI Cr. 2:02 (1987)

The "clear and convincing evidence" standard is somewhat more amorphous. The *Addington* Court recognized the problem,[4] as does McCormick.[5] Unfortunately, the Maryland Courts have not been entirely innocent in this regard. Loose and confusing language abounds. As pointed out by L. McLain, *Maryland Evidence* § 300.4 at 145–46 n. 6 (1987), the courts and the General Assembly have used a variety of adjectives to express this intermediate standard, among them "clear and satisfactory" evidence and "clear and unequivocal" evidence. Weisman notes other cases requiring the evidence to be "clear," "precise," and even "indubitable." *See, for example, Gingell v. Backus,* 246 Md. at 90, 227 A.2d 349; *Cox v. Tayman,* 182 Md. at 80, 32 A.2d 368. Professor McLain observes that "[t]hese terms have been used confusingly, sometimes as the equivalent of a preponderance of the evidence ..., sometimes as 'some-

---

**4.** "We probably can assume no more than that the difference between a preponderance of the evidence and proof beyond a reasonable doubt probably is better understood than either of them in relation to the intermediate standard of clear and convincing evidence." 441 U.S. at 425, 99 S.Ct. at 1809.

**5.** "No high degree of precision can be attained by these groups of adjectives. It has been persuasively suggested that they could be more simply and intelligibly translated to the jury if they were instructed that they must be persuaded that the truth of the contention is 'highly probable.'" *McCormick on Evidence,* § 340, at 959–60.

thing more' than a preponderance.... On occasion they have been equated to proof beyond a reasonable doubt." L. McLain, § 300.4, at 146 n. 6, cont'd. (Citations omitted.)

One has to approach these various expressions with a degree of circumspection. We must be especially cautious with the "indubitable" notion stressed by Weisman; taken literally, it would set a standard even more stringent than "beyond a reasonable doubt," for "indubitable" generally means beyond *any* doubt, incontestable. Notwithstanding the occasional use of that term and the fact that, in *Cox* and in *Gingell,* the Court found the evidence of fraud insufficient under the higher standard it set for weighing that evidence, we see no indication in those cases or any other that the Court meant to require that evidence of fraud be free of *all* doubt.

The polestar in this regard is *Berkey v. Delia,* 287 Md. 302, 413 A.2d 170 (1980), for it was there that the Court first attempted to define the "clear and convincing" evidence standard. Apparently not regarding *Cox,* or *Gingell,* or other such cases as representing an effort at defining the standard, the Court observed at 319 that it did not appear that it had previously defined the term. Adopting the view of this Court in *Whittington v. State,* 8 Md.App. 676, 679 n. 3, 262 A.2d 75 (1970), the Court proceeded to define the standard in relational terms, as requiring "more than a preponderance of the evidence *and less than evidence beyond a reasonable doubt.*" (Emphasis added.) *Berkey v. Delia,* 287 Md. at 320, 413 A.2d 170. *See also In Re Bennett,* 301 Md. 517, 529, 483 A.2d 1242 (1984). It then quoted from 30 Am.Jur.2d *Evidence* § 1167 (1967), including this statement:

"It has also been said that the term 'clear and convincing' evidence means that the witness to a fact must be found to be credible, and that the facts to which they have testified are distinctly remembered and the details thereof narrated exactly and in due order, so as to enable the

trier of the facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Berkey v. Delia*, 287 Md. at 320, 413 A.2d 170.

The Maryland Pattern Jury Instruction on "clear and convincing" evidence, MPJI 1:8(b), essentially adopts this notion, though in different language. It states: "To be clear and convincing, evidence should be 'clear' in the sense that it is certain, plain to the understanding, and unambiguous and 'convincing' in the sense that it is so reasonable and persuasive as to cause you to believe it." *Id.*

 However one may choose to define the standard, the one thing that is clear beyond dispute is that it is a lesser standard than "beyond a reasonable doubt." A plaintiff may prove a civil case of fraud upon less convincing evidence than would be required of the State in a criminal prosecution for fraud. To instruct otherwise is wrong.

 The trial court in this case seemed to believe that the two standards—"clear and convincing" evidence and "beyond a reasonable doubt"—were essentially synonymous. This became evident from the following colloquy during argument on Weisman's motion for judgment:

"COURT: Do we agree that clear and convincing evidence is beyond a reasonable doubt?

MS CROSSWHITE: No, we do not.

MR. BEALL: No, sir.

COURT: Oh, okay.

MR. BEALL: We do agree that the standard for the jury to apply in determining whether a fraud has been proven is clear and convincing. That's our view that's for the jury to apply.

MR. CIVILETTI: Right.

COURT: Okay.

MR. BEALL: That's not what we apply here in this particular setting.

COURT: Oh, no, no, no. I was wondering whether or not you'd seen that case that equates fraud, that equates—

MR. CIVILETTI: Yeah, there is that case and it does say that. There are some other cases that describe it in—in slightly less dramatic language, but I think they mean the same thing, and Your Honor can intermix those two and satisfy, you know—

COURT: I know the instruction for—

MR. CIVILETTI: Yes.

COURT:—beyond a reasonable doubt. I just don't know an instruction for clear and convincing.

MS CROSSWHITE: Your Honor, for what it's worth, as we talk about that while we're on it, the Maryland Pattern Jury Instructions do have a clear and convincing—

COURT: Okay.

MS CROSSWHITE:—instruction that I believe is in very common usage in fraud cases."

Obviously continuing to labor under the view that "clear and convincing evidence is beyond a reasonable doubt," the court thoroughly mixed the two standards in its instruction. The heart of that mixture was the clear, unambiguous statement: "Stated differently, to be clear and convincing the evidence of fraud must be such that you're left without reasonable doubt." Compounding the problem, the court proceeded then to define "reasonable doubt" in the traditional context of a criminal case. In so doing, it imposed upon Connors a greater burden of proof than the law requires. Taken as a whole, this instruction was both wrong and prejudicial. Connors is entitled to a new trial on Count IV of his Second Amended Complaint.

JUDGMENT REVERSED; CASE REMANDED TO CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR NEW TRIAL IN ACCORDANCE WITH OPINION AND MANDATE OF THE COURT OF APPEALS IN *WEISMAN V. CONNORS*, 312 MD. 428, 540 A.2d 783 (1988) AND THIS OPINION; COSTS TO ABIDE RESULT.