SCHMIDT ET AL. *v.* MILLHAUSER ET AL.

[No. 118, October Term, 1956.]

586

*Decided April 5, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Samuel Cooper* for the appellants.

*John J. Ghingher, Jr.,* with whom were *J. C. Merriman* and *Weinberg & Green* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a judgment rendered on the second count of a declaration filed by the plaintiffs, appellees, against the defendants, appellants.

The plaintiffs, David Millhauser, Herbert Millhauser and David L. Perlman, pursuant to a Stock Sale and Purchase Agreement, (Purchase Agreement), dated May 19, 1954, purchased all of the stock of the Oaklyn Apartment Corporation, (the corporation), from Henry J. Schmidt, Rita E. Schmidt, Lillian S. McCurdy and Robert McCurdy, defendants. The principal asset of the corporation was a large apartment house building located at 903 Druid Lake Drive in Baltimore. Subsequently that corporation was dissolved,

and its assets assigned to Lake Drive Apartments Corporation, plaintiff, of which the individual plaintiffs are the sole stockholders.

The first count of the declaration was based on the indemnity and guaranty agreement which was executed subsequent to the Purchase Agreement and which primarily guaranteed the payment of all debts owed by the corporation. The second count of the declaration alleges that the defendants, their agents and employees represented unto the plaintiffs that the apartment house building was in good condition "and that a new roof had been recently installed on said building", which representations were also specially set forth in the advertisement of said building for sale by the agents of the defendants, Service Realty Co., Inc., (Service Realty). Upon the consummation of the aforesaid agreement and the purchase of the stock it was found that the roof of the apartment house building was in such a state of disrepair as to require that it be completely replaced. The said roof had not been recently installed as represented by the defendants and, in fact, said roof was between 25 and 30 years old. As a consequence thereof it was necessary that the roof be replaced by the plaintiffs at an estimated cost of $2,460.00. Although the defendants were well aware of the condition of said roof at the time of the sale of the stock to the plaintiffs, and were well aware that said roof was between 25 and 30 years old, they nevertheless represented to the plaintiffs that the apartment house building and its roof were in good condition and permitted their agent, Service Realty, to wrongfully advertise that the property was in good condition and a new roof had been recently installed. The plaintiffs relied upon this representation and advertisement in purchasing the stock of the corporation from the defendants.

The case was submitted to a jury which brought in a verdict in favor of the plaintiffs on the first count for the sum of $5,000.00 and on the second count for the sum of $2,845.00. The defendants have abandoned the appeal on the first count and the appeal here is on the judgment awarded on the second count. They contend that the trial court committed error in refusing their motion for a directed verdict at the end

of the plaintiffs' case. However, the appellants withdrew their motion when they offered evidence after the denial of that motion. Rules of Practice and Procedure, Part Three, III, Trials, Rule 4, in effect when this case was tried, provides that in any proceeding tried by a jury, any party may move, at the close of the evidence offered by an opponent, or at the close of all evidence, for a directed verdict in his favor on any or all of the issues. A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted without having reserved the right to do so, and to the same extent as if the motion had not been made, but in so doing he withdraws the motion. *Smith v. Carr,* 189 Md. 338, 56 A. 2d 151; *Weil v. Free State Oil Co. of Maryland,* 200 Md. 62, 66, 87 A. 2d 826. However, the motion was renewed at the end of the whole case. We will therefore consider all the evidence offered.

Service Realty, a real estate agency employed by the appellants, distributed to various real estate offices, including that of Russell T. Baker & Company, with whom one of the plaintiffs, David I. Perlman, was associated, a brochure, offered in evidence, advertising the Lake Drive apartments for sale. That brochure contained the statement "a new roof was also installed recently, as well as all new carpets in the halls. This property is in good condition." Mr. Perlman then got in touch with Service Realty and was approached by Mr. David M. Klein of that company.

Mr. Perlman testified that Mr. Klein said at the outset that there was only one way the property could be sold, and he referred him to the brochure which stated that the assets of the corporation were being sold, and that was the only way the sale could be handled. Mr. Perlman knew that the Millhausers were interested in making an investment and he approached them with the brochure. During the course of the negotiations each of the appellees visited the apartment house at least once. On one occasion, a Sunday in March, 1954, when all of the plaintiffs were present, Mr. Klein, the President of Service Realty, mentioned the oil burner, the furnace and the roof and said that everything had been done

to put the building in condition and they would have nothing to worry about. There would be no need to spend money on the building. All of the plaintiffs relied on the brochure and also on Mr. Klein's representation with regard to the condition of the roof. On one occasion Mr. Perlman climbed up a stairway and took a look at the roof. He did not examine it minutely. It was a slag roof covered with finely crushed stone and it looked all right to him. He was not a roofing man and there was nothing to make him suspicious that it was not a good roof. They relied on Mr. Klein's representation in the brochure and orally with regard to the condition of the roof.

Mr. Robert Wilkins, who had been engaged in the roofing business for 22 years and who was engaged to examine the roof and replace it after the plaintiffs took possession of the building, and after they had discovered that the roof leaked, testified that the felt on the roof was so old it had worn down to the concrete. There were originally five layers of felt on the roof. The weather and sun had burned it badly. It could not be patched. Anyone who knew about roofing would know as soon as he looked at it that it was bad. People who were not experts would not observe that. He estimated that the roof, before he replaced it, was from 20 to 30 years old.

Mr. David M. Klein testified that the brochure hereinbefore referred to was prepared under his direction. When asked whether he remembered putting in the part quoted above, he stated that the girl in the office must have taken it down as it was given to him by the people who sold the property to Mr. Schmidt in 1947. When Mr. Schmidt bought the property, seven or eight years before the sale in the instant case, he went up on the roof and a Mr. Ettings, a representative of the Property Management Corporation, told him that a new roof had recently been put on. He did not tell the plaintiffs that there would be no cost except operating expenses, and no cost because of a new roof, and he never told them that a new roof had been put on. There was no way for him to tell whether there was anything wrong with the roof. Nothing was represented to the plaintiffs except in

the brochure which was sent out. It was possibly a month and a half or two months after the plaintiffs originally inspected the building before a contract was signed. He thought that a reprint was made of the brochure which was made in 1947 when Mr. Schmidt bought the property. Mr. Ettings, when the property was sold to Mr. Schmidt in 1947, told him, Mr. Klein, that a new roof had been put on the property. When Mr. Ettings told him that a new roof had been put on in 1947 he did not know whether that statement was true or not.

Mr. Herbert B. Millhauser, one of the plaintiffs, testified that he bought one-third of the stock in the corporation. He was with his brother and Mr. Perlman on the Sunday morning that Mr. Perlman had mentioned, and Mr. Klein told them about the condition of the apartment house. He said it was in perfect condition and they had just put in a new oil burning system not too long ago. He also mentioned that there was a new roof on the apartment house and he did not see where any major expenses would be required for quite sometime. They would not have paid the price had they known it would be necessary to replace the roof.

Mr. David Millhauser, the other plaintiff, testified that he noticed in the brochure that a new roof had been recently installed. On the Sunday morning, previously referred to, Mr. Klein told them that a new roof had been recently installed. Had he known of the expenditures required for the new roof, they would not have paid the price.

The Purchase Agreement, among other things, contained the following: "It is agreed between the parties hereto that the balance sheet as of the date of the settlement of the stock purchase shall be prepared by Hartlove and Byrne, Certified Public Accountants, and approved by Werner Notham, Certified Public Accountant."

Mr. Werner Notham, a certified public accountant, testified that he was employed by Mr. Perlman to inspect the books of the corporation and was given a copy of the Purchase Agreement. None of the plaintiffs asked him in his investigation to find out whether a new roof had been put on the building. When asked if a new roof had been put on in the

last two, three, or four years where it would have appeared on the books of the corporation, he replied that it would have appeared as an account in the balance sheet as an asset. He found no such account of a new roof. If he had been given the task of ascertaining whether a new roof had been put on, he could not have verified that fact for the last 10 years but he could have for the last 3 years. His task was to look at the expenses and income for the past year, which were warranted to be certain amounts, with certain exclusions. He did that.

The second count of the declaration, which is the count before us here, is one for deceit and is founded upon the alleged representations by the defendants, made through their agent, Service Realty, both verbally and in writing, that a new roof had been recently installed on the apartment house. There is ample testimony, in fact there is no doubt, that this representation was false. There is ample evidence that it was made for the purpose of selling the stock in the corporation; that the plaintiffs relied upon the representation, had a right to rely upon it, and they would not have paid the purchase price had they not believed the representation; and that plaintiffs suffered damage directly resulting from such representation. Proof of these elements is essential for recovery in an action for deceit. *McAleer v. Horsey,* 35 Md. 439; *Gittings v. Von Dorn,* 136 Md. 10, 15, 16, 109 A. 553, and cases there cited.

There is another element necessary to sustain an action for deceit. As was said by Judge Markell in *Babb v. Bolyard,* 194 Md. 603, 608, 72 A. 2d 13: "In some states the action for deceit has been expanded, with results not always satisfactory, to cover, besides actual fraud, negligent misrepresentation." In Maryland, in addition to the elements set out in the preceding paragraph, either the falsity of the statement must be known to the seller, or the misrepresentation made with such a reckless indifference to truth as to be equivalent to actual knowledge. *Gittings v. Von Dorn, supra,* and cases there cited; *Bishop v. E. A. Strout Realty Agency* (C. A. 4th), 182 F. 2d 503; *Brashears v. Collison,* 207 Md. 339, 350, 115 A. 2d 289. In fact, Mr. Klein admitted that seven

years before, in 1947, it had been represented to Mr. Schmidt, who bought the property at that time, that a new roof had been installed. There was ample evidence from which the jury could find that the representation made by Mr. Klein referred to Mr. Klein's knowledge of the condition of the roof seven years before, and that such representation at the time the sale here was made to the plaintiffs was with such reckless indifference to truth as to be equivalent to actual knowledge of its falsity. Mr. Klein must have known that, even if a new roof had been installed seven years before, another new roof had not been installed since that time. This representation was not an honest one as claimed by the appellants. Appellants admit that "recently" would have been within two years. In *Bishop v. E. A. Strout Realty Agency,* *supra,* the plaintiffs notified the real estate agent that it was necessary that the property they were purchasing have deep water adjacent so that boats could be brought in. They were assured by the real estate agent that the adjacent water was not less than six feet deep at low tide and nine feet or more deep at high tide. After settlement for the property plaintiffs discovered that the water was very shallow. Chief Judge Parker said in that case, among other things: "There is nothing in law or in reason which requires one to deal as though dealing with a liar or scoundrel, or that denies the protection of the law to the trustful who have been victimized by fraud. The principle underlying the caveat emptor rule was more highly regarded in former times than it is today; but it was never any credit to the law to allow one who had defrauded another to defend on the ground that his own word should not have been believed. The modern and more sensible rule is that applied by the Court of Appeals of Maryland in *Standard Motor Co. v. Peltzer,* 147 Md. 509, 510, 128 A. 451, where it was held not to be negligence or folly for a buyer to rely on what had been told him."

As above stated, the written instrument consummating the sale was the Purchase Agreement, which in no way referred to the condition of the apartment house. No objection was made either in the trial court or in this Court to the effect that the warranty was an integration of all prior agreements

594

between the parties and hence that the omission of any warranty that the roof had recently been renewed barred any action because of the untruthfulness of the statement on that subject which was made in the brochure. Furthermore, the rule that parol evidence is inadmissible does not apply in cases where the execution of a written instrument has been induced by false or fraudulent statements or promises. *Councill v. Sun Ins. Office*, 146 Md. 137, 149, 151, 126 A. 229, 51 A. L. R. 29. See also 56 A. L. R. 13, 32. The trial judge left to the jury the question of whether Service Realty was the agent of the defendants. No objection was made by the defendants. The question of agency was not raised by the defendants here.

The appellants contend that plaintiffs had no right to rely on Mr. Klein's representation as to the roof because the Purchase Agreement contained the above quoted clause that the plaintiffs' C. P. A. would approve the balance sheet and the indemnity agreement guaranteed the balance sheet and, therefore, when Mr. Notham, plaintiffs' C. P. A., examined the balance sheet he should have found that no new roof had recently been installed. Mr. Perlman testified that they gave Mr. Notham no instructions to check to see whether a new roof had been installed. Mr. Notham also so testified. He further stated that his instructions were to examine the expense and income account for the past year to see whether these corresponded with the amounts warranted. From this testimony it could be found that Mr. Notham's employment was for a limited purpose. The principal is affected by the agent's knowledge, only if the agent in failing to impart the knowledge has failed to act properly within the scope of his authority. *Restatement of Agency*, Volume 1, Sec. 275. There was no reason why the plaintiffs could not have relied on Mr. Klein's statement. *Piper v. Jenkins*, 207 Md. 308, 113 A. 2d 919. Mr. Perlman testified that Service Realty was well regarded as a real estate firm in Baltimore. The alleged defects in the roof were not so obvious or apparent that the purchasers must have known of such defects. Mr. Wilkins, the roofing contractor, testified that people who are not experts would not observe these defects. *Barrie v. Abate,*

209 Md. 578, 121 A. 2d 862; *The Gilbert Construction Co. v. William A. Gross,* 212 Md. 402, 129 A. 2d 518.

There was ample evidence for the trial judge to have submitted the case to the jury. The judgment will be affirmed.

*Judgment affirmed, with costs.*

HENDERSON, J., delivered the following dissenting opinion.

I find myself in disagreement with the other members of the Court in this case, both on the facts and the law, and shall try to indicate my views without elaboration. On the facts, I think the representations by the sales agent, that the building was in good condition, and that a new roof had been "recently" installed, were not so definitely fraudulent misstatements of fact as to support an action even against the agent. "Recently" is a relative term, and might well cover a period of more than seven years before the sale, particularly where the original roof lasted for twenty-five to thirty years. The agent honestly relied upon statements made to him by the former vendors. No doubt it was negligent for him not to check the copy prepared in his office, which repeated the former description. But I do not think his negligence amounts to intentional fraud, or such reckless indifference to truth as to be equivalent to actual knowledge.

Moreover, the purchasers of the stock knew that the agent was not an expert, and the source of his information was not disclosed. They inspected the building themselves, and might easily have discovered the inaccuracy by having the building examined by an expert, or by checking the vendors' books and records through their auditor. I doubt whether they relied, or were justified in relying, on the statement. Cf. *Harding v. Southern Loan & Ins. Co.,* 10 S. E. 2d 599 (N. C.). See also *Brodsky v. Hull,* 196 Md. 509, 516, and *Babb v. Bolyard,* 194 Md. 603, 609. Failure to rely is relevant on the question of causation, even though contributory negligence is not a defense to an intentional wrong. See *Bohlen, Deceit, Negligence, or Warranty,* 42 Harv. L. R. 733.

As the opinion points out, Maryland has followed the strict rule in actions based on deceit as laid down in *Derry v. Peek,*

14 A. C. 337. Cf. *Cahill v. Applegarth*, 98 Md. 493, 502. In *Derry v. Peek* a prospectus contained a false statement that the tramway company had the right to use steam or mechanical motive power, instead of horses, but it was held that the misrepresentation was honestly believed, although negligent, and that deceit would not lie. *Prosser, Torts* (2d ed.), § 88, p. 537, points out that the majority of American courts follow the rule announced in this case, but that some courts render lip service to it, while permitting recovery "for misrepresentation which falls short of actual intent to deceive." I fear we fall into the same error, which promotes uncertainty of decision.

I am also concerned with the effect of the acceptance of a deed to the property. Ordinarily, such acceptance would merge all prior representations, even when expressed in a prior contract of sale. See *Pybus v. Grasso*, 59 N. E. 2d 289 (Mass.). I think the fact that the sale was of shares of stock is not controlling. Here, there was a separate guaranty agreement which was entirely silent as to any warranties in regard to the building. I take it that no action would lie here on the theory of warranty. It seems unfortunate to enlarge the established rule as to fraudulent misrepresentation under such circumstances.