GUE, ᴇᴛ ᴜx. *v.* MITCHELL, ᴇᴛ ᴜx.

[No. 456, September Term, 1964.]

358

*Decided November 16, 1965.*

The cause was argued before PRESCOTT, C. J., and HAM-MOND, HORNEY, MARBURY and BARNES, JJ.

*Marvin Ellin* for appellants.

*Ernest S. Cookerly* for appellees.

MARBURY, J., delivered the opinion of the Court.

On November 14, 1963, James L. Gue and Willie B. Gue, his wife, appellants, filed a bill of complaint against Roy C. Mitchell and Mildred E. Mitchell, his wife, appellees, for injunctive relief, rescission of a contract of sale of a dairy farm, and an accounting and damages in the Circuit Court for Kent County. The appellants alleged that misrepresentation was practiced upon them, that they were entitled to have the contract rescinded, the monies returned and appropriate damages awarded for the misrepresentation. On September 21, 1964, after a lengthy trial Judge Rasin filed a memorandum opinion in which he found that no fraud or other unfair and unconscionable methods were proven to have been used in order to induce the Gues to purchase the Mitchell dairy farm, and ordered the bill of complaint dismissed, with costs. The sole question involved in this appeal is whether the lower court was correct in its action.

Up until the summer of 1960 James Gue was a successful dairy farmer, renting a farm located in Montgomery and Howard Counties on which he maintained a herd of one hundred dairy cattle, together with milking and other equipment. As of

June 1960 Gue's cattle and equipment were worth approximately $60,000 and were subject to a chattel mortgage of some $13,000. At about this time Mr. Gue became interested in purchasing a farm in Kent County to which he could transfer his dairy operation. He contracted George E. Scheeler, a Kent County realtor, who showed Gue several farms including one owned by the Mitchells. This farm was located near Kennedyville and comprised some three hundred and sixty-one acres, for which the owners were asking $125,000. Mr. Gue made an initial offer which was rejected. Subsequent negotiations, however, resulted in a written contract for the sale of the farm. This contract was drawn by Mr. William Dunbar Gould, the Mitchells' attorney, and was signed by the Mitchells and Gues in Mr. Gould's office on August 8, 1960. The contract provided, in pertinent part, for a purchase price of $114,000 to the Mitchells, with $5,000 being paid at the time of the signing of the contract, $14,000 to be paid at the time of settlement, and the balance to be paid by way of a purchase money mortgage from the buyers to the sellers, in the amount of $95,000. Gue also agreed to pay Scheeler's commission of $6,000. Settlement date under this contract was to be September 15, 1960. At the time the contract was signed, Mr. Gould, representing the Mitchells, was the only attorney present.

Prior to the settlement date difficulties developed for Gue because the creditors who held the chattel mortgages on his cattle and dairy equipment were not inclined to allow him to move his mortgaged property to Kent County until the chattel mortgages were paid. Adding to Gue's difficulties was the fact that he did not have sufficient funds to make the promised down payment of $14,000. Gue made these problems known to Mitchell, and upon the suggestion of Mr. Scheeler, further negotiations were entered into and they resulted in Mr. Mitchell promising to finance the purchase of the farm by taking a chattel mortgage on Gue's personal property in the amount of $22,300, $13,300 of which was to be used to pay off the chattel mortgages and $9,000 to be used toward the down payment under a second contract to be subsequently executed. Mr. Gould incorporated these provisions concerning the chattel mortgages into a new contract which also contained the same provisions

as the August 8 contract. September 23, 1960, at Mr. Gould's office was agreed upon as the time and place for the execution of the new contract.

The appellants claim that this contract, like the contract of August 8, 1960, was induced by fraud, inasmuch as the signing of these contracts was based upon Mr. Mitchell's unfulfilled promise to finance Gue's building of a milking parlor. While no mention is made of such a promise in either of the contracts, it was allegedly orally made by Mr. Mitchell prior to the execution of the August 8 contract, and reiterated in front of Mrs. Gue after it was discovered that the Gues would not be able to go through with the original contract. All parties agree that at the time of the sale, the farm buildings did not meet federal and state health requirements applicable to dairy farms, and that eventual compliance with such standards was necessary in order for Gue to sell milk for public consumption.

On September 23, 1960, the new settlement date, all parties appeared at the appointed place, but on this occasion the Gues were accompanied by their lawyer, Mr. Calvin Sanders, of Rockville, Maryland. According to Mr. Gue's testimony, Sanders was advised of Mr. Mitchell's oral promise prior to the execution of the contract dated August 8. After Mr. Gould had read aloud the new contract to the assembled parties, the Gues and Sanders retired to a separate room to discuss the terms of the contract. Having been assured by their attorney that "everything was all right," the Gues proceeded to sign the contract.

Following the settlement, Gue made monthly payments of $801.70 on the farm mortgage and $431.33 on the chattel mortgage. The sole source of income out of which the monthly payments were made was from the sale of milk by the Gues to the Greenhill Dairy of Wilmington, Delaware, which paid them $5 a hundredweight for the milk. The dairy, however, gave the Gues a total of nine months in which to erect a suitable milking parlor which would comply with the applicable federal and state health regulations. In June of 1961 Greenhill Dairy finally stopped buying milk from Gue because of the latter's failure to build a milking parlor.

Gue was then forced to sell his milk to the Ranier Dairy of

Bridgeton, New Jersey, which agreed to buy the milk albeit at a lower ($4 a hundredweight) price and on condition that a suitable milking parlor be erected immediately. As a result of the lower price he was receiving for milk, Gue's monthly payments to Mitchell became irregular and inadequate. By December 1962 Gue's troubles were at their apex: Mitchell was threatening to foreclose his mortgages because Gue was behind in his payments, Ranier Dairy had given advance notice that it would discontinue purchase of milk unless proper milking facilities were erected immediately, Gue had exhausted all possibilities of obtaining financing for the milking parlor, and a prospective purchaser, Charles Nau of Harford County, had informed him that he would be unable to make an immediate purchase of the property. Finally, on December 28, 1962, the Gues and the Mitchells executed a release agreement which was prepared by Mr. Gould following Mitchell's instructions, whereby each party released the other from any further obligation; the Mitchells repossessed the farm and retained all the money received from the Gues, pursuant to the contract of sale of September 23, 1960; and the Gues were relieved of their obligations under that contract, with the exception of the chattel mortgage on the personal property of the Gues. Before they signed the release the Gues, who were not represented by an attorney, heard Mr. Gould read the agreement and requested that one slight change be made. The requested change was made and the release was executed by all parties, part of the agreement being that the Gues were to be permitted to remain on the farm until March 31, 1963, at a rental of $461.70 per month.

During the trial Mr. Mitchell emphatically denied that he had made any promises regarding the proposed milking parlor prior to the September 23, 1960, signing of the contract. He stated that in May or June 1961 he did promise to help the Gues obtain financing but that he never promised to finance the milking parlor personally. In an effort to fulfill his promise to help the Gues find financing he testified that he contacted several lending institutions, but none of these efforts were successful. Mitchell admitted that he knew a milking parlor had to be erected in order for the farm to be used for dairy pur-

poses, but was also aware of the common practice of allowing a grace period before the standards had to be met. He testified that Gue had represented to him that he was personally going to do the carpentry work on the milking parlor, and since he knew that Gue had once been a carpenter, he believed him.

The appellees called two witnesses, Mr. Scheeler and Mr. Gould, who testified that if the alleged promises to build a milking parlor were made during the negotiations leading up to the sale they were totally unaware of them. In addition, Mr. Gould testified that he consulted with Mr. Sanders about the terms of the contract which was signed in September and that Mr. Sanders made no mention of any such oral promise.

The appellants both testified that Mr. Mitchell had promised to finance their building of a milking parlor and absent that promise they would never have purchased the farm. The testimony of James Gue indicated that this promise, which was so heavily relied upon, was extremely vague, in that Mr. Mitchell did not mention either the cost or the specific type of milking parlor he was promising to finance.

One of the appellants' key witnesses was Jeptha Harwood, who was employed by a manufacturer of dairy equipment. As a service to a prospective customer, Harwood's company provided Gue with building plans for the construction of a milking parlor. Harwood testified that in July of 1961 he attended a meeting of Messrs. Gue and Mitchell and that it was his understanding from that meeting that Mitchell was going to personally finance the building of a $10,000 to $12,000 milking parlor conforming to the plans furnished by his company.

Another witness called by the Gues, Edwin Fry, testified that Gue expressed an interest in erecting a milking parlor similar to the one costing some $24,000 located on the Fry farm. Fry recalled that he had talked to Mitchell about this also but that Mitchell indicated that he thought a much more modest structure would suffice. His understanding from these conversations was that Mitchell had agreed only to help in obtaining financing for a milking parlor and had not agreed to finance the building personally. Although called by the Gues, the testimony of Fry would seem to substantiate Mitchell's version of the promise rather than the Gues'.

The appellants have assumed an extremely arduous task in attempting to set aside a written contract for fraud. This Court has repeatedly set forth standards for setting aside an executed contract on the basis of fraud. In *Ranstead v. Allen,* 85 Md. 482, 486, 37 Atl. 15, we adopted the language of the Supreme Court of the United States in *Atlantic Delaine Company v. James,* 94 U. S. 207:

> 'that cancelling an executed contract is an exertion of the most extraordinary power of a Court of Equity. The power ought not to be exercised except in a clear case, and never for alleged fraud, unless the fraud be made clearly to appear, never for alleged false representations, unless their falsity is certainly proved, and unless the complainant has been deceived and injured by them."

In many other cases this Court has asserted that this extraordinary remedy of nullifying contracts should not be granted except in unusual cases, and that a much higher degree of proof is required than in the ordinary civil case where a decision is based upon a mere preponderance of evidence. *Boring v. Jungers,* 222 Md. 458, 160 A. 2d 780; *Schmidt v. Millhauser,* 212 Md. 585, 130 A. 2d 572; *Cox v. Tayman,* 182 Md. 74, 32 A. 2d 368; *McShane v. Hazelhurst,* 50 Md. 107. The lower court cited all of the above cases and concluded that the appellants did not come close to meeting the standards of proof required to show fraud in this state. We agree. In the instant case except for the completely self serving testimony of the appellants, there is nothing to show that Mr. Mitchell made any promise not contained in the written contract executed on September 23, 1960. The only individual besides the contracting parties, who the Gues claim had prior knowledge of Mitchell's oral promise to build a milking parlor was Mr. Calvin Sanders, whom the appellants deliberately did not choose to call as a witness. This being the case, the appellants could scarcely have been successful in the lower court even if the ordinary rule as to preponderance of evidence had been applied.

On this appeal and in their argument before the lower court the appellants pointed out that it is extremely difficult to prove

by positive and direct testimony the allegations made in the case and they therefore asked the lower court and this Court to infer from the unhappy results of the transactions between the parties that there must have been a design on the part of the appellees to have the Gues execute the various documents, intentionally leaving out of the contract of September 23, 1960, the oral promise to finance the milking parlor. The appellants contend that fraud can be inferred from the following selected facts: Gue knew that the existing milking facilities were inadequate and that he could not sell milk without adequate facilities; he knew that he could not obtain adequate credit in order to build his own milking parlor with the Mitchell chattel and farm mortgages extant; he knew that he could not meet the mortgage payments to the Mitchells unless he sold his milk; Mr. Mitchell knew all these facts also; therefore Mitchell must have promised Gue that he would personally finance the milking parlor or Gue would never have signed the contract. Unfortunately for the appellants the conclusion drawn from the above facts was not inescapable. Aside from the release there were, moreover, other facts from which inferences could be drawn and which were succinctly stated by Judge Rasin in his opinion:

> "If the Court is to draw conclusions from inferences, it seems more logical to conclude that such an agreement was not made in the various negotiations for the purchase of this farm. If such conversation had taken place, then, without having heard from Mr. Sanders, the attorney for the Gues who appeared with them at the settlement in Mr. Gould's office, the Court infers that such provisions would have been written into the contract as a specific condition of this purchase. The Court also infers from Mr. Gue's inability to recite any specific details of the agreement to furnish financing with respect to the amount of money involved, the terms of payment, etc., that no such agreement was made prior to September 23, 1960. Furthermore, the fact that the Plaintiffs had a private conference with their attorney, Mr. Sanders, before they executed the contract of September 23, 1960, had time to

consider all aspects of the purchase, and were asked by their attorney whether they still wanted to go through with the transaction, indicates to the Court no fraud or unfair and unconscionable methods used in obtaining the execution of the contract. There is no direct testimony, nor indeed is it otherwise suggested that the Defendants had a definite plan or purpose to have Contracts of Sale prepared to intentionally leave out such an important provision as the Plaintiffs now ascribe to the alleged promise on the part of Mr. Mitchell to furnish financing for the construction of a milking parlor."

In their brief and in oral argument the appellants lay great stress on the fact that Mr. Gue was a man of extremely limited intelligence who would have great difficulty in conducting his business affairs. At this point a discussion of Mr. Gue's intelligence and business acumen would be irrelevant because, as already indicated, the lower court in its opinion, with which we are in accord, concluded that the appellants did not adequately prove the misrepresentation upon which they relied.

*Decree affirmed, with costs.*