*Swinton Home Care, LLC v. Lillian Tayman*, No. 1671, September Term, 2023. Opinion by Eyler, James R. Filed January 31, 2025.

## CONTRACTS – FRAUD IN THE INDUCEMENT

An agent of Swinton Home Care, LLC ("Swinton"), an entity providing home health care services, represented to Lillian Tayman, the sister of Mary Tayman, who was then a hospital patient, that Lillian Tayman could sign a contract on behalf of Mary Tayman even though Lillian Tayman did not have a power of attorney or other authorization. Lillian Tayman signed the contract in the name of Mary Tayman but also signed a Guaranty using her own name. Swinton provided health care services to Mary Tayman after she was discharged from the hospital. Mary Tayman paid for the services for a period of time, then defaulted, and subsequently died. Swinton sued Mary Tayman's estate and Lillian Tayman for breach of contract, quantum meruit, and unjust enrichment.

Following a bench trial, the Circuit Court for Montgomery County found that Swinton fraudulently induced Lillian Tayman to sign Mary Tayman's name, thus voiding the contract. Therefore, there was no obligation to guarantee. Based on the finding of fraud, the entity could not pursue equitable remedies. The trial court entered judgment in favor of the Taymans.

On appeal, in essence, Swinton challenges the sufficiency of the evidence to support the result. Affirmed on appeal.

Circuit Court for Montgomery County
Case No. C-15-CV-22-003404

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1671

September Term, 2023

_____

SWINTON HOME CARE, LLC

v.

LILLIAN TAYMAN

_____

Leahy,
Reed,
Eyler, James R.
   (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Eyler, J.

_____

Filed: January 31, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Swinton Home Care, LLC ("Swinton"), appellant, commenced this action for breach of contract, quantum meruit, and unjust enrichment against Lillian Tayman ("Lillian"),[1] appellee, and her sister, Mary Tayman, to recover amounts allegedly owed for home health care services rendered to Mary. Mary died on April 27, 2023, prior to trial. Following a bench trial in the Circuit Court for Montgomery County, the trial court granted judgment in favor of Lillian, and Swinton appealed.

For the reasons set forth below, we shall affirm the judgment of the circuit court.

## BACKGROUND

Swinton's complaint alleged that on or about November 27, 2020, on behalf of Mary, Lillian signed Mary's name to a Services Agreement (the "Agreement") for Swinton to provide in-home health care and nursing services to Mary. Lillian also signed a Guaranty using her own name. Between November of 2020 and June of 2022, Swinton provided health care services to Mary. Beginning in March of 2022, Mary failed to tender payment to Swinton for its services.

At trial, Tracy Merrill testified that she had been employed with Swinton as a community liaison for approximately eleven years. Merrill stated that Seasons Hospice had contacted her and provided a referral for home health services for Mary. In response to that referral, Merrill contacted Lillian and scheduled a meeting. She met with Lillian on November 27, 2020 in the home of Lillian and Mary in Upper Marlboro to discuss care for Mary. At that time, Mary was approximately ninety-one years of age and bedbound in a

---

[1] For purposes of clarity and intending no disrespect, we refer to Lillian Tayman and Mary Tayman by their first names.

hospital but was about to be discharged from the hospital. Merrill reviewed the Agreement with Lillian, which provided that Mary would receive twenty-four-hour care at the rates of $29.00 per hour on weekdays and $31.70 per hour on weekends.

After reviewing the Agreement, Merrill asked Lillian if she was "power of attorney for [her] sister[.]" Merrill testified that Lillian responded affirmatively, "Yes, I am." Merrill stated that she informed Lillian that she could "sign for [her] sister" and advised Lillian that "[t]he Guarant[y] form has to be your signature because you are guaranteeing payments since you are paying for your sister."

Lillian signed the Agreement "Mary Tayman" but left blank the signature line for attorney in fact. Lillian signed the Guaranty "Lillian Tayman." Lillian also provided Merrill with a voided check from Mary's bank account for purposes of initiating Automated Clearing House ("ACH") payments.

On cross-examination, Merrill stated that she had asked to see the power of attorney, but Lillian told her that it was not available. Merrill stated that she had received training for her position as a community liaison when she was hired, which included the subject of powers of attorney. According to Merrill, asking Lillian to sign the Agreement for Mary based upon Lillian's representation that she had power of attorney was consistent with her training.

Lillian was eighty-seven years old at the time of trial. She testified that Merrill had contacted her regarding Mary's care, and that she had met with Merrill the day before Mary was discharged home from the hospital. Lillian stated that Merrill provided her with the Agreement and asked her to sign it on behalf of Mary. Lillian testified that she told Merrill

2

that she did not have power of attorney, and Merrill responded that "[i]t didn't matter." As stated above, in the section of the Agreement marked, "Client/PoA Signature," Lillian signed: "Mary Tayman." Lillian testified that she did not complete the adjacent area that read, "[a]s attorney in fact for: _____," because she did not have a power of attorney for Mary. Lillian denied telling Merrill that she had power of attorney for Mary, and also stated that she never had power of attorney for Mary.

At the conclusion of the evidence, the trial court made the following findings and entered judgment in favor of Lillian:

> The [c]ourt must find in this case as an initial matter that there is a valid and enforceable contract. I do not find that there is by clear and convincing evidence a valid and enforceable contract. The [c]ourt credits the testimony of [Lillian] that when she spoke with [Merrill] she asked [Merrill], she was asked whether or not [she] was a power of attorney. And her answer was no. And I credit her testimony that [Merrill] then said it doesn't matter. You can sign for her.

> And so the original contract having been induced with a fraudulent representation that she was permitted to sign a contract in the name of her sister even if she was not the power of attorney I find that the representation was false, and that it is falsity which was known to [Merrill] at the time that it was made or with reckless indifference to the truth of that statement, and . . . that the statement was made for the purpose of defrauding the other party to induce her to sign the contract, that [Lillian] relied on that statement to sign not her name, but her sister's name.

> The [c]ourt can clearly see and there is no dispute that the signatures for both the contract and the guarant[y] were made by [Lillian] and that she suffered damages as a result of that misrepresentation given [that she] got sued. The [c]ourt does not find in this case that there was any ratification of the contract because I have no evidence to indicate that the fraud that had been, fraud misrepresentation that had been perpetrated on her was discovered by her. There is just no testimony about that.

> The [c]ourt recognizes that [Merrill] has been employed with her company for 11 years. And in discussing the . . . statements and the

3

communication between the parties, it was unclear when we focus on the POA portion that there wasn't much to [Merrill's] assertion other than I asked her. There was no request to see the document, although the document would have been in her home and that is where the meeting took place. There was no follow up to do anything other than say okay, I accept that you are the POA. And she testified that she was trained by her employer and that she was trained in the area of power of attorney, seeking it.

It is also a fact that the [c]ourt finds that after the execution of the agreement, it was not even, a copy was not even provided. An executed copy of the agreement was not provided to [Lillian]. And so for those reasons, the [c]ourt is satisfied that the contract was one that was induced fraudulently. As such the contract is rescinded. And there is no equitable claim to be made when the [c]ourt has made a finding that there has been fraudulent inducement. And with that judg[]ment is denied to [Swinton] in favor of [Lillian].

This appeal followed.

## STANDARD OF REVIEW

We review a trial court's rescission order on both the law and the evidence. *Benjamin v. Erk*, 138 Md. App. 459, 470 (2001). *See* Md. Rule 8-131(c) (stating that, when an action is tried without a jury, we review the case on both the law and evidence and accept the trial court's findings of fact unless clearly erroneous). "[W]e 'must consider the evidence in the light most favorable to the prevailing party and decide not whether the trial judge's conclusions of fact were correct, but only whether they were supported by a preponderance of the evidence.'" *Cherry v. Mayor & City Council of Baltimore City*, 475 Md. 565, 594 (2021) (quoting *City of Bowie v. MIE, Props., Inc.*, 398 Md. 657, 676 (2007)). "'When a trial court decides legal questions or makes legal conclusions based on its factual findings, we review these determinations without deference to the trial court.'" *Plank v.*

*Cherneski*, 469 Md. 548, 569 (2020) (quoting *MAS Assocs., LLC v. Korotki*, 465 Md. 457, 475 (2019)).

## DISCUSSION

Swinton contends that there was no competent evidence in the record to support a finding of fraudulent inducement. In support of that argument, Swinton argues (1) the court applied the incorrect legal standard to determine the existence of a contract; (2) Lillian did not plead fraud in her answer to the complaint and did not argue it; (3) Lillian never took steps in support of a rescission; (4) the fraud, if any, related to the Services Agreement and not to the Guaranty; (5) Lillian's testimony was conflicting; and (6) Merrill's statements to Lillian were immaterial because Lillian testified that she was intent on finding care for Mary.

Fraudulent inducement refers to "a situation where a person is induced by some fraudulent representation or pretense to execute the very instrument which is intended to be executed[.]" *Meyers v. Murphy*, 181 Md. 98, 100 (1942). It occurs when "'one has been led by another's guile, surreptitiousness or other form of deceit to enter into an agreement to his detriment.'" *Rozen v. Greenberg*, 165 Md. App. 665, 674 (2005) (quoting *Sec. Constr. Co. v. Maietta*, 25 Md. App. 303, 307 (1975)). The elements of fraudulent inducement are that:

> (1) the [defrauding party] made a false representation to the [party defrauded],
>
> (2) the falsity of the representation was either known to the [defrauding party] or the representation was made with reckless indifference to its truth,

5

(3) the misrepresentation was made for the purpose of defrauding the [party defrauded],

(4) the [party defrauded] relied on the misrepresentation and had the right to rely on it, and

(5) the [party defrauded] suffered compensable injury as a result of the misrepresentation.

*Id.* at 674-75 (quotation marks omitted) (quoting *Hoffman v. Stamper*, 385 Md. 1, 28 (2005)).

Preliminarily, we note that in reviewing a trial court's findings, "'[w]e do not evaluate conflicting evidence but assume the truth of all evidence, and inferences fairly deducible from it, tending to support the findings of the trial court and, on that basis, simply inquire whether there is any evidence legally sufficient to support those findings.'" *Id.* at 676 (quoting *Mid S. Bldg. Supply of Maryland, Inc. v. Guardian Door and Window, Inc.*, 156 Md. App. 445, 455 (2004)). *See also Oliver v. Hays*, 121 Md. App. 292, 310 (1998) (explaining that it is "the exclusive responsibility of the trial court to assess the credibility of witnesses and to resolve conflicts in the evidence"). Under Rule 8-131, "unless the testimony is devoid of merit, we will not substitute our judgment for the trial court's determination of the credibility of the witnesses." *Keys v. Keys*, 93 Md. App. 677, 688 (1992) (citing *Colandrea v. Colandrea*, 42 Md. App. 421, 429 (1979)).

"Rescission of a contract is the abrogation or unmaking of the agreement and the placing of the parties to it in *statu quo*." *Ryan v. Brady*, 34 Md. App. 41, 49 (1976). Rescission is an extraordinary remedy that requires "proof of justifiable reliance on a material misrepresentation." *Id.* (citing *Chesapeake Homes, Inc. v. McGrath*, 249 Md. 480,

6

488 (1968)). *See also Carozza v. Peacock Land Corp.*, 231 Md. 112, 121 (1963). Under Maryland law, "an innocent misrepresentation may be sufficient to warrant rescission." *Ryan*, 34 Md. App. at 49 (citing *Glendale Corp. v. Crawford*, 207 Md. 148, 158 (1955)). The "extraordinary remedy" of rescission "rests largely within the discretion of the trial judge and should not be granted unless it would be equitable and just under all the circumstances." *Bartlett v. Dep't of Transp.*, 40 Md. App. 47, 50 (1978).

Swinton's first argument is based on the court's statement in the second sentence of its opinion that it did not find "by clear and convincing evidence a valid and enforceable contract." Swinton argues that the court erroneously applied a clear and convincing standard to the creation of a contract. In context, however, it is obvious that the court was referring to its finding of fraudulent inducement as the reason for its conclusion that there was no enforceable contract. Maryland law requires that "fraud must be proven by the heightened standard of 'clear and convincing' evidence." *Mathis v. Hargrove*, 166 Md. App. 286, 311 (2005) (quoting *Hoffman*, 385 Md. at 16). A finding of rescission must also be supported by a finding of clear and convincing evidence. *See Gue v. Mitchell*, 240 Md. 357, 363 (1965) (explaining that the "extraordinary remedy of nullifying contracts should not be granted except in unusual cases, and that a much higher degree of proof is required than in the ordinary civil case where a decision is based upon a mere preponderance of evidence"). Accordingly, the circuit court's finding of clear and convincing evidence of fraud, and its order of rescission based on that finding, were not error.

With respect to Swinton's argument that fraud had not been raised properly, when a party seeks both remedy at law and equitable relief, a hearing on the merits invokes the

7

circuit court's equitable powers. *See Calabi v. Gov't Emps. Ins. Co.*, 353 Md. 649, 654 (1999) (holding that a motion to enforce a settlement agreement involved both an action at law and equitable relief, invoking the court's powers in equity). *See also* 3 J.N. Pomeroy, *A Treatise on Equity Jurisprudence* § 950, at 768-69 (5th ed. 1941) ("Whenever a conveyance or contract is obtained by actual duress, equity will grant relief, defensively or affirmatively, by cancellation, injunction, or otherwise, as the circumstances may require."). "'It is beyond dispute that the authority of a court to rescind or cancel a contract is purely equitable.'" *Calabi*, 353 Md. at 654 (quoting *Creamer v. Helferstay*, 294 Md. 107, 114 (1982)).

In this case, Swinton brought claims seeking to recover at law and in equity. In ruling on the merits of Swinton's claims at trial, the court was within its authority to invoke its equitable powers to rescind the Agreement based on its determination that Swinton had fraudulently induced Lillian to execute the Agreement on behalf of Mary.

Swinton should not have been surprised by the fact that the court considered fraud because the issue had been raised by Lillian in her supplemental affidavit filed in support of her answer to a motion for summary judgment filed by Swinton. At the beginning of trial, the court denied that motion but stated that it was bifurcating the proceedings and would determine first whether there was an enforceable contract. Swinton did not object to that procedure.

Swinton also argues that Lillian did not attempt to rescind. "The right to rescind may be waived by not acting promptly on discovery of the facts from which it arises." *Cutler v. Sugarman Org., Ltd.*, 88 Md. App. 567, 578 (1991). The short answer is that the

8

court found that there was no evidence that Lillian discovered the fraud that had been perpetrated upon her. *See Cooke v. Real Est. Tr. Co.*, 180 Md. 133, 139-40 (1941) (explaining that a party to a contract does not waive the defense of fraud where it had no actual notice of the fraud).

With respect to Swinton's arguments related to the Guaranty specifically and to Lillian's intent to secure care, once the circuit court determined that the Agreement was rescinded, the Guaranty that Lillian had signed securing that Agreement was unenforceable. *See McGinley v. Massey*, 71 Md. App. 352, 361 (1987) (holding that guaranty was not separately enforceable where underlying stock redemption agreement was illegal).

Swinton's argument based on conflicting testimony was for the trial court to resolve. There is ample evidence in the record to support the trial court's findings of misrepresentation and reliance.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. APPELLANT TO PAY COSTS.**

9